UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINIQUE WILLIAMS,

                Plaintiff,

-against-

New York State Trooper MATTHEW HUGHES,
in his individual capacity,

                Defendant.

**OPINION AND ORDER**

20-CV-10571 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Dominque Williams ("Plaintiff") commenced this action, *pro se* and *in forma pauperis*, against Lieutenant Lahar (originally sued herein as "Officer Lohard" of the City of Newburgh Police Department ("NPD")); a John Doe police officer; and the City of Newburgh (the "City" or "Newburgh"). (Doc. 1, "Compl."). The Court, on March 18, 2021, issued an Order of Service and *Valentin* Order which, *inter alia*, directed NPD to identify the John Doe police officer that Plaintiff sought to sue. (Doc. 7). On April 28, 2021, in light of the City's response to the Court's *Valentin* Order (Doc. 12), the Court deemed Plaintiff's Complaint amended to identify Officer Colt Gennarelli as the John Doe Defendant (Doc. 15).

    The Court issued a Memorandum Opinion and Order on January 28, 2022, granting the City's motion to dismiss Plaintiff's *Monell* claim. (Doc. 31).[1] Defendants Lahar and Gennarelli then filed an Answer on February 1, 2022. (Doc. 32, "Ans."). The parties thereafter engaged in discovery pursuant to a Civil Case Discovery Plan and Scheduling Order. (Doc. 64). The Court later granted Plaintiff's application for the Court to request counsel (Doc. 65), and on March 16, 2023, counsel appeared *pro bono* on behalf of Plaintiff (Doc. 69—Doc. 71). The Court reopened

---

[1] This decision is available on commercial databases. *Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164 (S.D.N.Y. Jan. 28, 2022).

discovery in light of *pro bono* counsel's appearance. (Doc. 75). The parties then discovered that New York State Police ("NYSP") Trooper Matthew Hughes, rather than Gennarelli, was the "John Doe" officer that stopped Plaintiff. (Doc. 79). The Court granted Plaintiff's request to amend the Complaint on consent of Defendants Lahar and Gennarelli to drop Gennarelli and add Defendant Hughes. (Doc. 81; *see also* Doc. 85). On August 7, 2023, Plaintiff filed a Second Amended Complaint on consent of Defendants Lahar and Hughes. (Doc. 94; *see also* Doc. 93). Defendant Hughes sought the Court's leave to move to dismiss the Second Amended Complaint. (Doc. 97). The Court, on September 7, 2023, held a conference during which it construed Defendant Hughes' pre-motion letter as his motion to dismiss and denied the motion for the reasons stated on the record and law cited therein. (Doc. 109). Defendant Hughes filed an Answer to the Second Amended Complaint on September 20, 2023 (Doc. 110), and Defendant Lahar filed an Answer on September 25, 2023 (Doc. 111). Discovery closed on February 7, 2024. (Doc. 125).

Before the Court is Defendant Hughes' motion for summary judgment dismissing the Second Amended Complaint.[2] (Doc. 145; Doc. 146, "Def. Br."; Doc. 147; Doc. 148; Doc. 149; Doc. 150). Plaintiff opposed Defendant's motion (Doc. 152, "Pl. Opp."; Doc. 153; Doc. 154), and Defendant's motion was briefed fully with the filing of a reply memorandum of law on July 15, 2024 (Doc. 156, "Reply Br.").

For the reasons set forth below, Defendant's motion for summary judgment is DENIED.

---

[2] Defendant Lahar advised the Court on February 28, 2024 that he had reached a settlement with Plaintiff, and the Court so-ordered a stipulation of discontinuance of Plaintiff's claims against him on August 28, 2024. (Doc. 162). The caption has been amended accordingly. (Doc. 164).

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, the Rule 56.1 Statement and responses thereto (Doc. 147, "56.1"), and the admissible exhibits proffered on this motion. Unless otherwise indicated, the facts cited herein are undisputed.

On the night of November 3, 2018, there were two shooting incidents in Newburgh, wherein Plaintiff was shot in the arm, and two other individuals were killed. (56.1 ¶ 4). After Plaintiff admitted himself to St. Luke's hospital in Newburgh (the "Hospital"), the NPD, who was investigating the shootings, asked Plaintiff about the circumstances of his injury. (*Id*. ¶ 7). NPD officers also collected Plaintiff's clothing for evidence. (*Id*.). At about 01:20 A.M. on November 4, 2018, Hughes observed Plaintiff walking quickly out of the Hospital wearing only a hospital gown, underwear, and socks. (56.1 ¶ 9). The parties dispute whether Hughes then followed Plaintiff out of the Hospital while asking Plaintiff to stop so he could talk to him, or whether Hughes was already outside of the Hospital when Plaintiff exited unpursued by any law enforcement personnel. (*Id*. ¶ 11 (comparing, *e.g.*, Doc. 150-3, "Hughes Tr." at 89:12-25, 93:10-25, 95:1-7, with Doc. 150-2, "Pl. 1/16/24 Tr." at 54:9-18, 59:6-18, 60:10-21, 61:2-13, and Doc. 150-1, "Pl. 10/21/22 Tr." at 41:25-42:5)).

Hughes testified that he "put [his] hand on [Plaintiff's] shoulder . . . like you would touch -- grab a friend" to stop Plaintiff from leaving the encounter and asked why Plaintiff was leaving the Hospital. (*Id*. ¶ 13; Hughes Tr. at 98:8-10). Plaintiff testified that he stated that he had been discharged and displayed his discharge paperwork, that Hughes refused to acknowledge the paperwork, and that Hughes grabbed Plaintiff on the shoulder to restrain him from leaving. (56.1 ¶¶ 13, 16). Plaintiff then turned and began to run away from Hughes down the adjoining street,

and Hughes chased Plaintiff on foot. (*Id*. ¶ 16). NYSP Trooper Kelli McVea, who had also been nearby, then ran after Hughes and Plaintiff. (*Id*. ¶ 17). Plaintiff was brought to the ground, where Hughes handcuffed Plaintiff. (*Id*. ¶ 20). Hughes did not frisk, pat-down, or search Plaintiff. (*Id*. ¶ 21). After Plaintiff was handcuffed, Hughes and McVea walked Plaintiff back to the Hospital. (*Id*. ¶ 23). Upon their arrival, medical staff informed Hughes and McVea that Plaintiff had been discharged from the Hospital. (*Id*. ¶ 25). Hughes and McVea immediately released Plaintiff from handcuffs and allowed him to leave. (*Id*. ¶ 26).

Hughes, the sole remaining Defendant in this action, now seeks summary judgment dismissing Plaintiff's Second Amended Complaint.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[3] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343,

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on

"mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I. <u>Statute of Limitations – Relation Back</u>

Defendant first argues that he is entitled to summary judgment on his third affirmative defense, dismissing all of Plaintiff's claims against him as barred by the statute of limitations. (Def. Br. at 8-13). The parties agree the applicable three-year limitations period provided by New York law began on November 4, 2018 and expired on November 3, 2021; and that Plaintiff's original complaint was timely. (Pl. Opp. at 8 n.4; Def. Br. at 8). Defendant argues, however, that Plaintiff's addition of Hughes in 2023 does not relate back under Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure.

Rule 15(c)(1)(A) provides for relation back if "the law that provides the applicable statute

of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Courts analyzing relation back look to New York Civil Practice Law and Rules ("CPLR") § 1024 for § 1983 claims in cases involving John Does arising in New York. *Robertson v. Fluerinord*, No. 23-CV-04977, 2024 WL 4728544, at *11 (S.D.N.Y. Nov. 8, 2024) (citing *Hogan v. Fischer*, 738 F.3d 509, 518-19 (2d Cir. 2013)). CPLR § 1024 authorizes the substitution of a "true name" for an "unknown party" and provides that when such substitution occurs, "all prior proceedings shall be deemed amended accordingly."

"To take advantage of § 1024, a party must meet two requirements. First, the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.' Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). To satisfy the diligence prong, a plaintiff must "at least mak[e] a good faith effort" to uncover the officer, "tak[ing] concrete and timely steps to ascertain an officer defendant['s] identity." *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017). "[C]ourts in this District typically find a lack of due diligence only where the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations." *Abreu v. City of New York*, No. 17-CV-06179, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018).

Summary judgment to Defendant on his affirmative defense of statute of limitations is not warranted on this record. Nothing in § 1024 requires a plaintiff to seek information from a particular source or in a specific manner to be considered diligent. *See id*. at *5 ("There is no clear rule as to what specific actions a plaintiff must take to satisfy the due diligence requirement"). Plaintiff testified that he repeatedly demanded the then-unknown officer's identity, requesting

Hughes' name and badge number from Hughes during the incident. (Pl. 1/16/24 Tr. at 97:20-99:22), though Hughes testified that he recalls identifying himself to the crowd (Hughes Tr. at 52:5-11, 120:3-121:11). Plaintiff, proceeding *pro se* and as an incarcerated individual as of November 5, 2018, took steps to uncover the unknown officer's identity within the limitations period, such as seeking out and obtaining medical records, which referred to the incident but did not identify the officer's name. (Pl. 1/16/24 Tr. at 33:8-24, 111:25-112:23); *see Colson v. Haber*, No. 13-CV-05394, 2016 WL 236220, at *4 (E.D.N.Y. Jan. 20, 2016) ("[T]he fact that Colson submitted requests for information that reasonably could have disclosed the identities of the officers demonstrates due diligence").

Plaintiff testified that he did not get a good look at the officer who approached him. (Pl. 10/21/22 Tr. at 23:15-19, 48:22-24; Pl. 1/16/24 Tr. at 55:13-16). He testified that he did not think the officer who stopped him was a State Trooper. (Pl. 1/16/24 Tr. at 55:3-5 115:24-116:10). When Plaintiff commenced this action in December 2020, Plaintiff timely filed suit and named this John Doe officer. (Doc. 1). Plaintiff then received assistance from the Court in identifying the John Doe through the Court's *Valentin* order and the City's response. (Doc. Nos. 1, 7, 12). Importantly, the Court interpreted the City's response to the *Valentin* Order (Doc. 12) as identifying the John Doe as Officer Colt Gennarelli and accordingly deemed Plaintiff's original complaint to be amended in that regard. (Doc. 15). It is thus reasonable for the *pro se* Plaintiff to have relied on the City's response and the Court's Order, and believed that Gennarelli was the John Doe he sought to sue, rather than continuing to investigate the officer's identity. *Gudanowski v. Burrell*, No. 20-CV-00111, 2021 WL 3887612, at *5 (S.D.N.Y. Aug. 31, 2021) ("The Court will not fault plaintiff, who appears to have been proceeding pro se when he sought such records, for failing to distinguish between the Bergen County Jail and the East Rutherford Police Department, or various New York

state entities. And although plaintiff conceivably could have taken better or additional steps to ascertain the officers' names before filing the original complaint – for example, by following up with his Legal Aid attorney or asking for more specific records in any of his requests – the law does not place such a high bar on plaintiff.").

Plaintiff's testimony is not "so problematic that no reasonable juror could credit it." *Frost v. New York City Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020) (quoting *Jeffreys*, 426 F.3d at 554)). Hughes contends that because Plaintiff was arrested by Troopers in October 2018 and saw a Facebook Live video of the incident hours after, he should have recognized Hughes and known he was from NYSP. This fails to take into account Plaintiff's testimony that when he saw the video shortly after the incident—years before bringing suit--he was still on pain medication, intoxicated, and was unable to identify any officers by viewing the video. (Pl. 1/16/24 Tr. at 107:20-110:5, 129:19-131:10). It also fails to take into account the Troopers' testimony that they did not recall identifying themselves to Plaintiff during the October 2018 arrest (Hughes Tr. at 52:5-14; Doc. 150-6, "McVea Tr." at 89:19-90:12), and that Hughes testified that he did not recall recognizing Plaintiff from the October 2018 arrest (Hughes Tr. at 73:7-11).

Moreover, the facts to which Hughes point in an effort to undermine the adequacy of Plaintiff's diligence do no more than arguably raise an issue of fact. For example, Hughes cites statements from Plaintiff's family members, such as Catherine Swartz, Plaintiff's cousin, who said that she remembered Plaintiff mentioning on the night of the incident that NYSP Troopers were "there" (Doc. 150-5, "Swartz Tr." at 33:8-34:17); and Plaintiff's mother, who acknowledged that she mentioned at some point after the incident that Troopers were "involved" (Doc. 150-4, "C. Reed Tr." at 49:19-23). To the extent these statements are in any way material to the question of whether Plaintiff exercised due diligence in identifying the John Doe, they require credibility

determinations that the Court will not make on a summary judgment motion. *See Porter*, 92 F.4th at 147.

Accordingly, Defendant Hughes' motion for summary judgment dismissing the Second Amended Complaint on Hughes' affirmative defense of the statute of limitations grounds is denied.

II. First Claim for Relief: 42 U.S.C. § 1983 (False Arrest and False Imprisonment)

Hughes also separately seeks partial summary judgment dismissing Plaintiff's First Claim for Relief and on his second affirmative defense of qualified immunity on that claim. (Def. Br. at 14-19).

The First Claim for Relief alleges a claim under § 1983 of unconstitutional false arrest.[4] A plaintiff is required to show, for such claims in New York, that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Plaintiff must establish "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ndoye v. City of New Rochelle*, No. 23-CV-03805, 2024 WL 308221, at *4 (S.D.N.Y. Jan. 26, 2024) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

Hughes contends that he is entitled to summary judgment because he has established there existed reasonable suspicion to stop Plaintiff (Def. Br. at 14-17), and therefore Plaintiff's confinement was "otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir.

---

[4] "[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (describing false arrest claim as type of false imprisonment claim and stating that claims are analyzed identically).

2019). In any event, he argues, he is entitled to qualified immunity on this claim for relief because, "at a minimum, reasonable officers could have disagreed whether there was reasonable suspicion to stop Plaintiff and question him, and then probable cause to chase him when he fled." (Def. Br. at 18). Notwithstanding Defendant's position, Plaintiff's First Claim for Relief survives the motion for summary judgment as there are clearly disputed issues of material fact precluding summary judgment as to the First Claim for Relief and the affirmative defense of qualified immunity.

Specifically, the "pertinent events" leading up to Plaintiff's arrest are disputed and summary judgment, therefore, would be inappropriate. *Brock v. City of New York*, No. 15-CV-01832, 2018 WL 3579099, at *7-8 (S.D.N.Y. July 25, 2018); *see also Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) (reversing summary judgment on qualified immunity grounds because of the parties' disputed accounts of the events leading to plaintiff's arrest); *Quon v. City of New York*, No. 14-CV-09909, 2016 WL 4411416, at *4-5 (S.D.N.Y. Aug. 18, 2016) (denying summary judgment due to the parties' "significantly different accounts of [p]laintiff's arrest" and holding that "a jury must determine what transpired between the officers and [p]laintiff before the Court can make a determination as to qualified immunity").

Defendant contends that his seizure of Plaintiff was justified as a *Terry* stop, which permits a police officer to stop and detain a person for questioning if the officer has reasonable suspicion that the suspect has or is engaged in criminal activity. *See Vasquez v. Maloney*, 990 F.3d 232, 238-39 (2d Cir. 2021). Here, not only are many salient facts disputed but, viewing the facts in the light most favorable to Plaintiff, at the time of the seizure, Hughes had no reason to suspect Plaintiff was involved in any criminal wrongdoing. Indeed, the parties appear to agree only that: (1) there were two shootings in Newburgh the night that Plaintiff admitted himself to the Hospital for a gunshot wound to his bicep; (2) that Plaintiff left the Hospital in only a hospital gown, underwear,

11

and socks, walking at a brisk pace; and (3) after Hughes applied physical contact to Plaintiff's shoulder to restrain him from leaving, Plaintiff turned and began to run away.

Hughes maintains that, while in the hospital, he overheard a conversation involving NPD supervisors regarding Plaintiff's status as a suspect (Hughes Tr. at 69:6-70:2), but other witness testimony in the record suggests that Plaintiff was not suspected of having committed a crime (*see, e.g.*, McVea Tr. at 115:19, 120:6-11; Doc. 153-4 at 62:9-63:4). Hughes also contends that Plaintiff's behavior when leaving the hospital justified a *Terry* stop, but Hughes testified that he had previously observed NPD in the Hospital with Plaintiff, that he did not see handcuffs on Plaintiff at the time he stopped him and it did not appear he had broken through restraints, and Plaintiff was not pursued by any law enforcement personnel when exiting the Hospital. (Hughes Tr. at 68:5-16, 94:1-7, 106:13-16). Hughes contends that Plaintiff's brisk pace out of the Hospital in only a gown justified a *Terry* stop as it was "seemingly odd." (Def. Br. at 15). His testimony suggests, however, that it is standard police practice that the clothes of shooting victims are seized; and that Hughes knew that Plaintiff was a shooting victim. (Hughes Tr. 72:15-18, 82:7-24). Other witness testimony suggests that when Plaintiff exited the Hospital, he walked up to his waiting family members, hugged his mother, and began walking home with his family. (Pl. 10/1/22 Tr. at 42:6-23; Pl. 1/16/24 Tr. at 46:17-20, 51:18-25, 87:4-25; Swartz Tr. at 20:10-18, 52:19-53:8; C. Reed Tr. at 33:16-21, 69:12-18; Doc. 153-8 at 24:23-25:3, 58:7-12). Viewing the facts in the light most favorable to Plaintiff and resolving factual ambiguities in his favor, the record evidence raises material issues of fact concerning the pertinent events leading up to Plaintiff's seizure are not suitable to resolution at summary judgment.

Likewise, the Court cannot conclude on this disputed record that Hughes is entitled to summary judgment on his second affirmative defense of qualified immunity on Plaintiff's false

arrest claim. "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). An officer's decision to arrest "is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). The Second Circuit has held that an officer is protected by qualified immunity, and summary judgment on a false arrest claim is appropriate, if "a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Rine v. Giardina*, 199 F.3d 1323 (2d Cir. 1999) (quoting *Lennon*, 66 F.3d at 424-25 (emphasis in original)).

The Court cannot determine on this record whether Hughes' seizure of Plaintiff was objectively reasonable. See *Bacote v. Riverbay Corp.*, No. 16-CV-01599, 2017 WL 11567934, at *12 (S.D.N.Y. Nov. 8, 2017) ("Because summary judgment on qualified immunity grounds is inappropriate where there are disputed issues of fact pertinent to a determination of the reasonableness of an officer's conduct, Defendants' motion for summary judgment on this basis is denied."); see also *Nazario v. Thibeault*, No. 22-01657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (open material issues of fact preclude finding of qualified immunity); *Zwick v. Town of Cheektowaga*, No. 17-CV-00727, 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021)

13

("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense."). Because, as explained *supra*, the circumstances leading up to the seizure are disputed and hinge on credibility determinations, which can only be made at trial, Plaintiff's First Claim for Relief survives summary judgment.

Accordingly, Defendant's motion for summary judgment as to the First Claim for Relief and the affirmative defense of qualified immunity is denied.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is DENIED. The claims for relief alleged in Plaintiff's Second Amended Complaint against Defendant Hughes shall proceed to jury trial.

The parties shall, by January 31, 2025, file those materials required by Rules 6(A) and 6(B) of this Court's Individual Practices.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 145).

SO ORDERED:

Dated: White Plains, New York
       December 27, 2024

_____
Philip M. Halpern
United States District Judge

14